STATE MEDICAL BOARD OF OHIO, APPELLEE, *v.* MILLER, APPELLANT.

[Cite as Ohio State Medical Bd. *v.* Miller (1989), 44 Ohio St. 3d 136.]

(No. 88-1156—Submitted May 3, 1989—Decided July 26, 1989.)

138

*Anthony J. Celebrezze, Jr.,* attorney general, and *Christopher J. Costantini,* for appellee.

*Sirkin, Pinales, Mezibov & Schwartz, H. Louis Sirkin* and *Edmund J. McKenna,* for appellant.

DOUGLAS, J. This case presents the question of how a statute, designed to permit investigation of the suspected wrongdoing of physicians, is impacted by the physician-patient privilege. Because the statute in question contains safeguards designed to protect patient confidentiality, which is the same purpose served by the physician-patient privilege, we find that the physician-patient privilege does not preclude turning patient records over to the State Medical Board pursuant to R.C. 4731.22(C)(1).

The board's claim of authority to compel production of patient records is found in R.C. 4731.22(C)(1), which states in pertinent part:

"For the purpose of investigation of a possible violation of division (B)(3), (8), (9), (11), or (15) of this section, the board may administer oaths, order the taking of depositions, issue subpoenas, and compel the attendance of witnesses and production of books, accounts, papers, records, documents, and testimony.

"In investigating possible violations of all remaining divisions of this section, the board may also administer oaths, order the taking of depositions, issue subpoenas, and compel the attendance of witnesses and production of books, accounts, papers, records, documents, and testimony. However, in such instances, * * * a subpoena for patient record information shall not be issued without consultation · with the attorney general's office and approval. of the secretary of the board, the supervising member, and a member of the board who is licensed to practice medicine, osteopathic medicine, or podiatric medicine. Before issuance of such subpoena, the three board members shall determine whether there is probable cause to believe that the complaint filed alleges a violation of this chapter, Chapter 4730. of the Revised Code, or any rule of the board, and that the records sought are relevant to the alleged violation and material to the investigation. Such records must cover a reasonable period of time surrounding the alleged violation. Upon failure to comply with any subpoena issued by the board and after reasonable notice to the person being subpoenaed, the board may move for an order compelling the production of persons or records pursuant to Rules of Civil Procedure. * * *"

Appellant, on the other hand, relies on the language of R.C. 2317.02(B), more fully quoted in fn. 2, *supra,* which provides that "[a] physician [shall not testify] concerning a communication made to him by his pa-

tient in that relation or his advice to his patient, * * * [unless] * * * the patient * * * gives express consent * * *." Appellant contends that this statutory provision requires him to refuse to comply with the board's subpoena of patient records.

In addition, appellant cites changes in the language of R.C. 4731.22 as support for his position. Former R.C. 4731.22(D)(1) stated in pertinent part:

"The board shall conduct all investigations and proceedings in such a manner as to protect patient confidentiality. *The board shall obtain the consent of the patient in the form of a written release signed by the patient or by an authorized representative of the patient before seeking access to medical record information concerning a patient for the purpose of any investigation or hearing,* except that no such consent is required if there is reason to believe that there has been a violation of division (B)(3) of section 4731.22 of the Revised Code. The board shall not make public names or other identifying information about patients unless proper consent is given or a waiver of the patient privilege exists under division (B) of section 2317.02 of the Revised Code, except that no such consent or waiver is required if the board possesses reliable and substantial evidence that no bona fide physician-patient relationship exists." (Emphasis added.) (139 Ohio Laws, Part I, 2413-2414.)

Present R.C. 4731.22(C)(1), effective March 17, 1987, states in pertinent part:

"The board shall conduct all investigations and proceedings in such a manner as to protect patient confidentiality. The board shall not make public names or other identifying information about patients unless proper consent is given or a waiver of the patient privilege exists under division (B) of section 2317.02 of the Revised Code, except that no such consent or waiver is required if the board possesses reliable and substantial evidence that no bona fide physician-patient relationship exists."

It is appellant's contention that, because current R.C. 4731.22(C)(1) deleted specific language requiring patient consent for the release of records, appellant is bound by the general physician-patient privilege found in R.C. 2317.02(B). We do not agree.

Though both parties spend much time arguing the question of whether R.C. 4731.22 is ambiguous and, therefore, in need of interpretation, our holding does not hinge on this argument. It should not be disputed that, "[a]bsent ambiguity, a statute is to be construed without resort to a process of statutory construction. * * *" *Ohio Dental Hygienists Assn.* v. *Ohio State Dental Bd.* (1986), 21 Ohio St. 3d 21, 23, 21 OBR 282, 284, 487 N.E. 2d 301, 303, citing *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E. 2d 413. With R.C. 4731.22(C)(1) being clear and unambiguous, there is no need to resort to statutory construction.

Furthermore, while we agree with the court of appeals that R.C. 4731.22(C)(1) and 2317.02(B) are not in conflict, we also agree that R.C. 2317.02(B) should not be given the broad application that appellant desires.

A review of the physician-patient privilege found in R.C. 2317.02(B) indicates that the statute has a specific purpose. It is designed to create an atmosphere of confidentiality, which theoretically will encourage the patient to be completely candid with his or her physician, thus enabling more complete treatment. As this court stated in *State* v. *Antill* (1964), 176 Ohio St. 61,

64-65, 26 O.O. 2d 366, 368, 197 N.E. 2d 548, 551, "* * * [t]he purpose of this privilege is to encourage patients to make a full disclosure of their symptoms and conditions to their physicians without fear that such matters will later become public. * * *" In addition, *Huzjak* v. *United States* (N.D. Ohio 1987), 118 F.R.D. 61, 63, explains the purpose of the physician-patient privilege:

"Under the physician/patient privilege, a treating physician is prohibited from disclosing matters disclosed by the patient to the physician during consultations regarding treatment or diagnosis of the patient. The rationale of this privilege is to promote health by encouraging a patient to fully and freely disclose all relevant information which may assist the physician in treating the patient. *Floyd* v. *Copas,* 9 Ohio Op. 3d 298 (1977). If the patient feared that such information could be revealed by the treating doctor, the patient might refrain from, or be inhibited from, disclosing relevant information. The privilege is designed to provide an assurance of confidentiality."

While we are cognizant of the laudable purpose and goal to be achieved by the physician-patient privilege, we are likewise cognizant that the privilege may not be invoked automatically in all circumstances. This is so for several reasons.

First, there existed no physician-patient privilege at common law. McCormick, Evidence (3 Ed. Lawyer's Ed. 1984) 243, Section 98. See, also, *In re Loewenthal* (1956), 101 Ohio App. 355, 357, 1 O.O. 2d 302, 303, 134 N.E. 2d 158, 160. Therefore, because the privilege is in derogation of the common law, it must be strictly construed against the party seeking to assert it. *Weis* v. *Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E. 2d 245.

Second, the opportunity to practice medicine is not an unqualified right. All physicians must be licensed to practice pursuant to R.C. Chapter 4731. Indeed, this is a justifiable exercise of state power. "* * * Licensure can legitimately be required under a state's inherent police power, that is, a state's right to regulate for the benefit of its citizens' health, safety, morals, and welfare. *Watson* v. *Maryland,* 218 U.S. 173, 30 S. Ct. 644, 54 L. Ed. 987 (1910)." *Rabino* v. *Commw., State Registration Bd. for Professional Engineers* (1982), 69 Pa. Commw. 191, 450 A. 2d 773, 775. See, also, *France* v. *State* (1897), 57 Ohio St. 1, 47 N.E. 1041. In addition, the statutory scheme that grants the license also contains provisions for the revocation of such license. Clearly the license is a personal privilege subject to reasonable restrictions and revocation by the issuing authority. *Lap* v. *Axelrod* (1983), 95 App. Div. 457, 467 N.Y. Supp. 2d 920. It is certainly reasonable that, in situations where the license-granting authority is investigating a license-holder, the license-holder should not be allowed to take steps to thwart the legitimate investigation. This is, in effect, the result if the physician-patient privilege is invoked here.

Third, in certain circumstances, the policy considerations underlying the physician-patient privilege are outweighed by other factors. "* * * Against the interest of the patient in having his condition remain confidential, must be balanced the interest of the public in detecting crimes in order to protect society." *Antill, supra,* at 65, 26 O.O. 2d at 368, 197 N.E. 2d at 551. See, also, *State* v. *Garrett* (1983), 8 Ohio App. 3d 244, 8 OBR 318, 456 N.E. 2d 1319. We feel that the interest of the public at large, served here through the board's investigation of possible wrongdoing by a licensed

physician, outweighs the interests to be served by invocation of the physician-patient privilege.

This determination is further strengthened by the fact that the most important purpose to be served by R.C. 2317.02(B)—patient confidentiality—is also served by R.C. 4731.22(C)(1). The board is *required* by statute to maintain the confidentiality of patient records reviewed during an investigation. As noted *supra*, R.C. 4731.22(C)(1) states in pertinent part that "[t]he board shall conduct all investigations and proceedings in such a manner as to protect patient confidentiality. The board shall not make public names or other identifying information about patients unless proper consent is given * * *." With the primary purpose of the physician-patient privilege already served by R.C. 4731.22(C)(1),

the invocation of R.C. 2317.02(B) is unwarranted and unnecessary.

Clearly, the board has the right and the duty to investigate physicians suspected of statutory violations. We have set forth a number of reasons why the physician-patient privilege will not be allowed to be invoked as a means of hindering the board's investigation. Accordingly, R.C. 2317.02 (B) may not be used by a physician to prevent the State Medical Board from compelling production of patient records pursuant to R.C. 4731.22(C) (1).

Therefore, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.