DECISION AND JOURNAL ENTRY
Appellant, Erik Halgrimson, appeals his conviction in the Lorain County Court of Common Pleas. We affirm his conviction but reverse his felony sentence and remand for re-sentencing.
 I.
Mr. Halgrimson was attending Oberlin College ("Oberlin") in the winter of 1995-1996 and studying medieval history and learning to play the organ at the Conservatory at Oberlin when he went on a medical leave of absence from his studies at Oberlin. His leave of absence was due to a suicide attempt. He was hospitalized in Lorain, Ohio and was then transferred to a hospital near his home in Denver, Colorado. Prior to leaving Oberlin, Mr. Halgrimson had been tutored in music by Amy Oshiro, who apparently suspected that he was stalking her.
While Mr. Halgrimson was in Denver, Ms. Oshiro was engaged as a performer at the Denver Performing Arts Complex. Mr. Halgrimson was volunteering with the symphony at the same location. Ms. Oshiro obtained a restraining order in Colorado against Mr. Halgrimson, which specified that he was to stay at least 100 yards from Ms. Oshiro and not to enter the Denver Performing Arts Complex until after June 1, 1996. During this period, Mr. Halgrimson was also seeing Dr. Thomason to treat his psychological problems. He ended his relationship with Dr. Thomason in February of 1997.
Mr. Halgrimson received a letter from Oberlin, dated September 4, 1997, which invited him to return when his convalescence was complete and stating that the Coordinator of Leaves and Withdrawals for the Student Academic Services Department "look[s] forward to seeing you when you return." After September 12, 1996, the Oberlin College Safety and Security Office allegedly sent a letter to Mr. Halgrimson informing him that he was "hereby prohibited from entering upon the grounds, buildings or facilities of Oberlin College." Although it is apparently Oberlin policy to send such letters with a return receipt requested, or some other type of confirmation, no receipt was returned for this letter. Nonetheless, Mr. Halgrimson's name was placed on Oberlin's no trespassing list.
In October 1996, Mr. Halgrimson returned to Oberlin. His stated purpose was to complete the forms and procedures required for readmission. While attending a concert at Oberlin on the evening of October 5, 1996, Ms. Oshiro spotted Mr. Halgrimson. She contacted Oberlin security. Two Oberlin Security Officers, one being Sergeant Gary Kriesen, and Sergeant Michael Moorman of the Oberlin Police Department responded. Mr. Halgrimson was removed to an area near an exit from the concert hall. The officers then informed him that he was under arrest for trespassing as his name appeared on the trespass list. Mr. Halgrimson bolted for the door, knocking Sergeant Kriesen aside. Once he was outside, a struggle ensued in which the officers eventually succeeded in handcuffing Mr. Halgrimson.
On August 19, 1997, Mr. Halgrimson was indicted by the Lorain County Grand Jury on two counts of assault, in violation of R.C. 2903.13(A), one count of resisting arrest, in violation of R.C. 2921.33(A), and one count of menacing by stalking, in violation of R.C. 2903.211(A). On March 2, 1999, Mr. Halgrimson waived his right to a jury trial, and the case was tried to the bench on March 2 and 3, 1999. In an entry journalized on March 3, 1999, the judge found Mr. Halgrimson guilty of: (1) one count of assault of a peace officer, a felony of the fourth degree, R.C. 2903.13(A) and (C)(3); (2) one count of assault, a misdemeanor of the first degree, R.C. 2903.13(A) and (C); and (3) one count of resisting arrest, a misdemeanor of the second degree, R.C. 2921.33(A) and (D). Mr. Halgrimson was found not guilty of menacing by stalking. In an entry journalized on May 28, 1999, the trial court sentenced Mr. Halgrimson to a year and five months in prison for assaulting a peace officer, six months in prison for assault, and ninety days in prison for resisting arrest. The sentences were to run concurrently. This appeal followed.
 II.
Mr. Halgrimson asserts seven assignments of error. We will address each assignment of error in due course, consolidating his sixth and seventh assignments of error to facilitate review.
 A. EVIDENTIARY ISSUES
Initially, we note our standard of review. "`The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere.'" (First alteration original.) State v. Maurer (1984), 15 Ohio St.3d 239, 265, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).
 1.
First Assignment of Error
 THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBITS 1 AND 2 TO THE PREJUDICE OF THE APPELLANT.
Mr. Halgrimson avers that the trial court erred in admitting State's exhibits one and two composed of the Colorado restraining order against Mr. Halgrimson and Sergeant Moorman's medical record respectively, because the State failed to provide Mr. Halgrimson with copies of these documents after giving him notice under Crim.R. 12(D)(2) of its intent to use them as evidence. We disagree.
Crim.R. 16(B)(1)(c) provides that
 [u]pon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial[.]
When a prosecutor violates the provisions of Crim.R. 16, such violation constitutes "reversible [error] only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." State v. Joseph (1995), 73 Ohio St.3d 450, 458. Moreover, Crim.R. 16(B) "only requires the prosecution to disclose, and to permit the defendant to obtain, the information sought." State v. Parker
(1990), 53 Ohio St.3d 82, paragraph one of the syllabus.
Mr. Halgrimson asserts that the trial court erred in not sanctioning the State for failing to provide him with copies of documents that the State intended to present as evidence against him at trial. Mr. Halgrimson complains of the introduction of State's exhibits one and two into evidence at trial. On March 5, 1998, Mr. Halgrimson requested notice from the State as to what evidence the State intended to use at trial pursuant to Crim.R. 12(D)(2). The State responded on April 8, 1998 with a list of the documentary evidence and witnesses it intended to produce and call at trial. Included in that list were "restraining order-Boulder County-Colorado" and "Allen Memorial medical records of Sgt. Moorman-Oberlin Police Department" which were later introduced as State's exhibits one and two. Mr. Halgrimson complains that the State did not forward copies of these documents to him and, hence, should have been sanctioned for violating Crim.R. 16. However, we conclude that Crim.R. 16(B) does not require the prosecution to furnish the defendant with a copy of the exhibits he or she requests discovery of, but rather, only requires the prosecution to make the exhibits available for the defendant to copy. Accordingly, we discern no violation of Crim.R. 16, and therefore, no abuse of discretion on the part of the trial court in allowing the admission of State's exhibits one and two. Mr. Halgrimson's first assignment of error is overruled.
 2.
Third Assignment of Error
 THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING, OVER REPEATED OBJECTIONS, TESTIMONY CONCERNING ALLEGED PREVIOUS AND/OR SUBSEQUENT ACTS OF THE APPELLANT IN VIOLATION OF EVID.R. 404(B) TO THE PREJUDICE OF THE APPELLANT.
Mr. Halgrimson argues that the trial court erred in allowing evidence of his prior bad acts pursuant to Evid.R. 404(B). He asserts that the testimony regarding his dealings with his psychiatrist in Colorado and arrest in Chicago were not relevant to the charge of menacing by stalking and were highly prejudicial to his defense. We disagree.
Generally, evidence of prior criminal acts, wholly independent of the crime for which defendant is on trial, is inadmissible. State v.Thompson (1981), 66 Ohio St.2d 496, 497. R.C. 2945.59 codifies exceptions to this rule, providing:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Evid.R. 404(B) states that
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evid.R. 404(B) is in accord with R.C. 2945.59. State v. Broom (1988),40 Ohio St.3d 277, 281. It is not required that the "other acts" are "like" or "similar" to the crime charged, but only that they "tend to show" any of the enumerated things. State v. Hill (1992),64 Ohio St.3d 313, 322-23.
 "Scheme, plan or system" evidence is relevant in two general factual situations. First, those situations in which the "other acts" form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible pursuant to this sub-category of "scheme, plan or system" evidence, the "other acts" testimony must concern events which are inextricably related to the alleged criminal act.
State v. Curry (1975), 43 Ohio St.2d 66, 73. Hence, it is necessary to determine whether any of the matters enumerated in R.C. 2945.59 were relevant at trial and, if so, whether the testimony that the prosecution elicited regarding other acts of the defendant tended to prove the relevant enumerated matter. State v. Slagle (1992), 65 Ohio St.3d 597,606.
"Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." Broom, 40 Ohio St.3d at paragraph one of the syllabus. Moreover, evidence of other acts by a defendant is only admissible when it tends to show one of the matters enumerated in the statute and only when the evidence offered is relevant to prove that the defendant is guilty of the offense in question. Statev. Burson (1974), 38 Ohio St.2d 157, 158.
Here, Mr. Halgrimson was charged with, among other things, menacing by stalking, in violation of R.C. 2903.211(A). R.C. 2903.211(A) prohibits one from "engaging in a pattern of conduct [through which one] * * * knowingly cause[s] another to believe that [one] will cause physical harm to the other person or cause mental distress to the other person." This court has previously held that "`[o]ther acts evidence can be particularly useful in prosecutions for menacing by stalking because it can assist the jury in understanding that a defendant's otherwise innocent appearing acts, when put into the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress.'" State v. Tichon (1995), 102 Ohio App.3d 758, 768, quotingState v. Bilder (1994), 99 Ohio App.3d 653, 658. The testimony adduced at trial by the State regarding Mr. Halgrimson's physical altercation with his Colorado psychiatrist, apparently resulting from Mr. Halgrimson's desire to return to Oberlin, and regarding Mr. Halgrimson's arrest in Chicago, apparently related to contact he had with one of Ms. Oshiro's friends, provided the finder of fact with the factual background of the crime charged. Hence, we conclude that the evidence adduced at trial was admissible because it provided information that would show a course of conduct relating to Mr. Halgrimson's stalking of Ms. Oshiro, and therefore, connect Mr. Halgrimson's seemingly innocent return to Oberlin to an ongoing course of conduct. Moreover, Mr. Halgrimson wasacquitted of the charge of menacing by stalking so any error in regard to the admission of this evidence would be harmless. See Crim.R. 52(A). Accordingly, Mr. Halgrimson's third assignment of error is overruled.
 3.
Fourth Assignment of Error
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT BY FORCING THE APPELLANT TO TESTIFY AS TO PRIVILEGED MATTERS, OVER THE OBJECTION OF HIS TRIAL COUNSEL.
Mr. Halgrimson avers that the trial court erred in not allowing his attorney to assert the doctor-patient privilege regarding questions placed to Mr. Halgrimson by the State regarding his past psychiatric treatment. He asserts that the trial court erred in allowing testimony over his objection in that it was barred as privileged under the physician-patient privilege contained in R.C. 2317.02(B). We find any error in this regard to be harmless.
R.C. 2317.02 provides that a witness "shall not testify in certain respects: * * * (B)(1) A physician or a dentist concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division * * * [.]" "At common law, the courts did not recognize a privilege for information disclosed to a physician through the treatment of his patient." In re Winstead (1980),67 Ohio App.2d 111, 114. Furthermore, this statute "is in derogation of the common law and must be strictly construed against the party seeking to assert it[.]" Ohio State Dental Bd. v. Rubin (1995),104 Ohio App.3d 773, 775.
Mr. Halgrimson argues that his statements to his psychiatrist were covered by the privilege enumerated in R.C. 2317.02. He asserts that the trial court erred in ruling that the privilege went to the doctor's testimony only and did not concern a patient's testimony on cross-examination. We, however, do not reach this issue as we find that no prejudicial testimony was elicited during the State's inquiry into Mr. Halgrimson's conversations with his psychiatrist. Upon review of the record, Mr. Halgrimson denied making any of the statements that the State inquired about to his psychiatrist. Moreover, as we noted before, Mr. Halgrimson was acquitted of the stalking charge. "`[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required.'" (Citation omitted.)State v. Walker (1978), 55 Ohio St.2d 208, 216. Accordingly, we find that, assuming arguendo that the trial court erred in allowing questions regarding Mr. Halgrimson's conversations with his psychiatrist to be asked of him, the error was harmless as no prejudicial evidence was thereby obtained. Hence, Mr. Halgrimson's fourth assignment of error is overruled.
 B.
Second Assignment of Error
 THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
Mr. Halgrimson argues that his trial counsel failed to object to the testimony of Sergeant Moorman when he testified that he suffered strains in his arm and chest and that his physician recommended four days of bed rest. He further asserts that his trial counsel failed to move for a mistrial at the proper time in regard to testimony about Mr. Halgrimson's arrest in Chicago and failed to seek to compel discovery of State's exhibits one and two. Finally, Mr. Halgrimson argues that his counsel was ineffective for failing to press his motion for jail time credit for the period he was incarcerated out-of-state. We disagree.
A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v. Richardson (1970),397 U.S. 759, 771, 25 L.Ed.2d 763, 773, fn. 14. A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693.
In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690,80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160,174.
Mr. Halgrimson first challenges his trial counsel's performance in regard to his failure to move for a mistrial when evidence of Mr. Halgrimson's arrest in Chicago was introduced. As we previously noted, Mr. Halgrimson's assertion that the trial court erred in admitting this evidence under Evid.R. 404(B) is incorrect. Furthermore, Mr. Halgrimson was acquitted of the charge of menacing that his arrest in Chicago was related to namely purporting to show part of his alleged pattern of stalking by showing his attempt to contact one of Ms. Oshiro's friends. Further, the documents evidencing his arrest were never admitted into evidence. Accordingly, we find neither error by trial counsel nor prejudice to the defendant in trial counsel's failure to make a motion for a mistrial.
Mr. Halgrimson next complains of his trial counsel's ineffectiveness in failing to inspect and copy State's exhibits one and two prior to trial as is allowed by Crim.R. 16(B). State's exhibit one was a copy of the restraining order Ms. Oshiro obtained against Mr. Halgrimson in Colorado. As this exhibit went to the stalking charge rather than the assault charges and Mr. Halgrimson was acquitted of the stalking charge, we cannot find a reasonable probability the outcome of the trial would have been different had this evidence not been admitted. State's exhibit number two is a copy of Sergeant Moorman's medical records from Allen Memorial Hospital on the day of the arrest of Mr. Halgrimson. Although the better practice may have been to inspect the exhibit prior to trial, we can find no prejudice which accrued to Mr. Halgrimson's defense due to trial counsel's failure to inspect the record. There is no indication on the part of appellate counsel that this document was inadmissible nor did trial counsel present evidence of prejudice at trial by questioning the authenticity or veracity of the statements made in the medical record. In short, "there is again no evidence presented as to whether 
witnesses were available or what pertinent facts might have been garnered" from trial counsel's pre-trial inspection of these records. Inre Wise (1994), 96 Ohio App.3d 619, 628. Furthermore, Sergeant Moorman testified that Mr. Halgrimson hit him. Accordingly, we cannot conclude that there exists a reasonable probability that, had trial counsel reviewed Sergeant Moorman's hospital records prior to trial, the result of the trial would have been different.
Mr. Halgrimson further argues that his counsel was ineffective forfailing to press the issue of out-of-state jail time credit before thetrial court. Generally, it is the duty of the sentencing court tocalculate the number of days that the defendant is to be credited fortime already served. State v. Gregory (1995), 108 Ohio App.3d 264,267.[1] "The department of rehabilitation and correction shall reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced." (Emphasis added.) R.C. 2967.191.
From the record on appeal, we are unable to determine whether Mr. Halgrimson is entitled to credit for jail time served out-of-state. The trial court requested that this issue be briefed at Mr. Halgrimson's original sentencing hearing. We, however, cannot conclude that trial counsel's failure to file such a brief presents a reasonable probability that, were it not for this omission, Mr. Halgrimson's sentence would have been reduced. This conclusion is dictated by the dearth of evidence in the record that Mr. Halgrimson was incarcerated prior to trial due to this charge in another jurisdiction. Hence, Mr. Halgrimson has failed to show that he was prejudiced by his trial counsel's omission. Accordingly, we must overrule his ineffective assistance of counsel claim on this issue as well.
Mr. Halgrimson's second assignment of error is overruled.
 C.
Fifth Assignment of Error
 THE APPELLANT'S CONVICTIONS FOR TWO ASSAULTS AND RESISTING ARREST WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Halgrimson avers that his conviction was against the manifest weight of the evidence because of the discrepancies in the testimonies of Sergeant Moorman and Sergeant Kriesen. Further, he avers that the testimony of Ms. Palmer, who witnessed the incident should be believed above that of the officers as she was unbiased while the officers may have been motivated by a desire to avoid potential civil liability for their conduct in arresting Mr. Halgrimson. Moreover, he argues that, due to the prejudicial testimony regarding Mr. Halgrimson's altercation with his psychiatrist and his arrest in Chicago, the trial court judge lost his way and carried out a miscarriage of justice. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
One is guilty of assault if one "knowingly cause[s] or attempt[s] to cause physical harm to another." R.C. 2903.13(A). One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Generally, assault is a first-degree misdemeanor. R.C. 2903.13(C). If, however, the assault is committed against a peace officer, which includes any member of the organized police force of a municipal corporation, the assault is a felony of the fourth degree. R.C. 2903.13(C)(3) and 2935.01(B).
One is guilty of resisting arrest, in violation of R.C. 2921.33(A), if one, "recklessly or by force, [resists] or interfere[s] with a lawful arrest of [oneself] or another."
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
R.C. 2901.22(C).
Here, Sergeant Moorman, an officer of the City of Oberlin Police Department, testified that Mr. Halgrimson hit him. Further, he testified that Mr. Halgrimson tried to escape and a struggle ensued. Upon thorough review of the record, we find Sergeant Kriesen's testimony was substantially similar, in that Mr. Halgrimson pushed him out of the way while attempting to escape and engaged in a fight with Sergeant Moorman. Moreover, even Ms. Palmer, who Mr. Halgrimson avers is an unbiased third-party observer, testified that Mr. Halgrimson "ran outside. He ran away." Ms. Palmer could neither confirm nor deny what happened after Mr. Halgrimson pushed Sergeant Kriesen aside and bolted out the door. The officers testified that it was at that point that a struggle ensued.
The evidence, which Mr. Halgrimson asserts caused the trial court to lose its way, was most prejudicial in regard to the charge of menacing, of which Mr. Halgrimson was acquitted. Moreover, as noted above, this evidence was admissible. Furthermore, ignoring the allegedly prejudicial evidence, we find the record to weigh in favor of conviction. Accordingly, we cannot conclude that Mr. Halgrimson's conviction was against the manifest weight of the evidence or that the trial court carried out a miscarriage of justice by convicting him. Mr. Halgrimson's fifth assignment of error is overruled.
 D.
Sixth Assignment of Error
 THE TRIAL COURT ERRED IN FAILING TO SENTENCE THE APPELLANT TO COMMUNITY CONTROL SANCTIONS.
Seventh Assignment of Error
 THE TRIAL COURT ERRED IN FAILING TO SENTENCE THE APPELLANT TO THE SHORTEST PRISON TERM AVAILABLE.
Mr. Halgrimson argues that the trial court erred in imposing a prison sentence for his felony conviction without making the statutorily required findings pursuant to R.C. 2929.13. Furthermore, he asserts that, even if the trial court did not err in imposing a prison term, the trial court erred in imposing a prison term that exceeded the minimum prison term without making the statutorily required findings pursuant to R.C. 2929.14. We agree that the trial court erred in imposing a prison term longer than the minimum without making the statutorily required findings.
Our standard of review is controlled by R.C. 2953.08(G)(1), requiring us to determine if the trial court clearly and convincingly acted contrary to law or the record. Clear and convincing evidence is that "`which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Cincinnati BarAssn. v. Massengale (1991), 58 Ohio St.3d 121, 122, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 A prison term may be imposed in two ways. If the court makes a finding that at least one factor enumerated in is applicable, the court then reviews whether a prison term is consistent with the purposes of sentencing. In doing so, the court is guided by the seriousness and recidivism factors enumerated in and (C), but may also consider all other relevant factors. The court then considers the factors contained in and (E), and all other relevant factors, to determine whether the defendant is amenable to community control. ; and (E). If the court finds after this review that (1) a prison term is consistent with the purposes of felony sentencing, and (2) the offender is not amenable to community control, then the court is required to impose a prison term.
 A prison term may also be imposed when the trial court does not make a finding that at least one factor under is applicable to the defendant. In this situation, the trial court reviews whether community control is consistent with the purposes and principles of felony sentencing in the individual case by considering, again, the factors enumerated in through (E). If appropriate under the circumstances, the trial court is required to impose a sentence of community control. If not, the court retains its broad discretion to fashion a sentence consistent with.
State v. Sims (Dec. 9, 1998), Summit County App. No. 19018, unreported,at 3-4.
R.C. 2929.14 governs the imposition of prison terms for felony convictions, stating, in relevant part:
 (A) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
* * *
 (4) For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months.
* * *
 (B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The Ohio Supreme Court has interpreted this statute to require that
 unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.
State v. Edmonson (1999), 86 Ohio St.3d 324, 326. However, "R.C.2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis original.) Id.
In this case, Mr. Halgrimson was sentenced prior to the Ohio Supreme Court's pronouncement in Edmonson. Nonetheless, we must apply Edmonson
in interpreting the applicable statute. Our analysis begins with a recitation of the events below. Mr. Halgrimson was sentenced on only one felony, that of assault of a peace officer, a felony in the fourth degree. R.C. 2903.13(C)(3) and 2935.01(B). The trial court sentenced him to seventeen months in prison for that offense. Mr. Halgrimson asserts that he did not previously serve a prison term; the State did not challenge this assertion before the trial court or on appeal.
Mr. Halgrimson first avers that the trial court erred in imposing any prison sentence without making one of the required findings under R.C.2929.13(B). However, as we held in Sims, supra, at 3-4, the trial court may also impose a prison sentence if, although it finds none of the factors in R.C. 2929.13(B) applicable, it finds community control sanctions inconsistent with the principles and purposes of felony sentencing after considering the factors enumerated in R.C. 2929.12. See, also, R.C. 2929.11. The trial court explicitly followed this procedure in its sentencing entry. Hence, we find no error with the trial court's decision to impose a prison term rather than community control sanctions. Mr. Halgrimson's sixth assignment of error is overruled.
Mr. Halgrimson further challenges the trial's decision to sentence him to seventeen months for his felony conviction. Mr. Halgrimson was not previously incarcerated and the minimum sentence for a fourth degree felony is six months in prison. The Ohio Supreme Court's holding in Edmonson is controlling as to our disposition of this matter. The trial court was required to make one of the statutorily required findings enumerated in R.C. 2929.14(B) on the record when it sentenced Mr. Halgrimson to more than the minimum. However, upon review of the transcript of the sentencing hearing and the trial court's sentencing journal entry, no such finding was made. Accordingly, we sustain Mr. Halgrimson's seventh assignment of error and reverse Mr. Halgrimson's felony sentence and remand the cause to the trial court for re-sentencing.
Mr. Halgrimson's sixth assignment of error is overruled and his seventh assignment of error is sustained.
 III.
Mr. Halgrimson's first, second, third, fourth, fifth, and sixth assignments of error are overruled. Mr. Halgrimson's seventh assignment of error is sustained. The cause is remanded to the trial court for re-sentencing or other proceedings not inconsistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 _________________________ WILLIAM G. BATCHELDER
FOR THE COURT, WHITMORE, J., CONCURS.
CARR, J., CONCURS IN JUDGMENT ONLY.
[1] The basis of this general rule is the former Crim.R. 32.2(D) which provided that the trial court "shall forward a statement of the number of days confinement which the defendant is entitled by law to have credited to his minimum and maximum sentence." Corder v. Ohio Dept. of Rehab. Corr. (1994), 94 Ohio App.3d 315, 317. However, Crim.R. 32.2(D) has been repealed. Although we cite the general rule herein, we do not pass on whether it may have been modified as we need not address this issue to reach our holding.